UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>[1] LUZ MARIA PEÑA LOPEZ,<br>[2] TATIANA CORREA PEÑA, and<br>[3] ENRIQUE GUTIERREZ RIVERA.<br><br>Defendants, | **INDICTMENT**<br><br>CRIMINAL NO. 25-429 (PAD)<br><br>VIOLATIONS:<br>18 U.S.C. § 1594(b);<br>18 U.S.C. § 1589(a) and (d);<br>18 U.S.C. § 1592(a);<br>18 U.S.C. § 4; and<br>18 U.S.C. § 2.<br><br>FOUR COUNTS &<br>FORFEITURE ALLEGATION |

**THE GRAND JURY CHARGES:**

**INTRODUCTION**

At all times material to this Indictment:

1.     Defendant [1] LUZ MARIA PEÑA LOPEZ ("PEÑA") and defendant [3] ENRIQUE GUTIERREZ RIVERA ("GUTIERREZ") were residents of Carolina, Puerto Rico, as well as spouses.

2.     [3] GUTIERREZ was a municipal police officer in Carolina, Puerto Rico.

3.     Defendant [2] TATIANA CORREA PEÑA ("CORREA") was a resident of Carolina, Puerto Rico, as well as [1] PEÑA's daughter and [3] GUTIERREZ's stepdaughter.

4.     Victim-1, whose identity is known to the Grand Jury, was an individual with an intellectual disability and a resident of Carolina, Puerto Rico.

5.     In or about May 2018, under the guise of benevolence, defendants [1] PEÑA, [2] CORREA, and [3] GUTIERREZ took Victim-1 into [1] PEÑA'S and [3] GUTIERREZ'S home

1

in Carolina, Puerto Rico, within the District of Puerto Rico. Victim-1 lived at this residence, along with others known and unknown to the Grand Jury, between in or about May 2018 and in or about May 2023.

6.      Instead of providing a safe and secure environment, defendants [1] PEÑA and [2] CORREA compelled Victim-1's labor and services by engaging in a coercive scheme involving physical and psychological abuse, threats of violence, document servitude, isolation and separation from Victim-1's family, the failure to provide and facilitate basic hygiene and medical care, and the provision of drugs and unprescribed medication to Victim-1.

7.      By and through their coercive scheme, defendants [1] PEÑA and [2] CORREA caused Victim-1 to panhandle and engage in fraudulent and criminal activity for their own financial benefit, as they required Victim-1 to turn over the proceeds of such activities to them.

8.      In or about September 2018, defendant [1] PEÑA applied to become the representative payee of Victim-1's Social Security benefits to be able to administer and control those funds. In or about October 2018, the Social Security Administration ("SSA") selected PEÑA to be Victim-1's representative payee.

9.      Between in or about October 2018 and in or about March 2022, [1] PEÑA made false assertions to SSA through required annual representative payee reports to explain how Victim-1's Social Security benefits were used that year and to show compliance with U.S. laws and regulations so that SSA would continue to issue Victim-1's benefits to [1] PEÑA.

10.      Defendants [1] PEÑA and [2] CORREA converted Victim-1's monthly Social Security and other benefits she received over time for their own use. Defendant [1] PEÑA also required Victim-1 to finance a vehicle for a family member's use in Victim-1's name, even though Victim-1 could not drive and had no driver's license.

2

11.    During the course of their coercive scheme, defendants [1] PEÑA and [2] CORREA confined Victim-1 in a former goat and/or rooster shack in the defendants' residence, overnight, at times under lock and key.

12.    For the entire length of the scheme, and while employed as a municipal police officer, defendant [3] GUTIERREZ knowingly allowed the exploitation of Victim-1 to occur in his residence and took no steps to either curtail or report the exploitation.

13.    Defendant [3] GUTIERREZ took affirmative steps to conceal the scheme from pertinent authorities by failing to report on his joint tax returns with his wife, [1] PEÑA, Victim-1's Social Security benefits that [1] PEÑA had converted to her own use as well as failing to report Victim-1's panhandling and other proceeds that she was required to hand over to [1] PEÑA.

## COUNT ONE
Conspiracy to Commit Forced Labor
(Title 18, United States Code, Sections 1594(b) and 1589(a) and (d))

14.    The allegations set forth in paragraphs 1 through 13 of the Introduction of this Indictment are incorporated by reference and realleged as though fully set forth herein.

15.    From in or about May 2018 and continuing until in or about October 2023, within the District of Puerto Rico and elsewhere, the defendants,

[1] LUZ MARIA PEÑA LOPEZ and
[2] TATIANA CORREA PEÑA,

did knowingly conspire with each other and other persons known and unknown to the Grand Jury to provide and obtain the labor and services of a person (referred to herein as Victim-1) by means of (1) force, threats of force, physical restraint, and threats of physical restraint to Victim-1 and any other person; (2) serious harm and threats of serious harm to Victim-1 and any other person;

(3) the abuse and threatened abuse of law and legal process; (4) any scheme, plan, and pattern intended to cause Victim-1 to believe that, if Victim-1 did not perform such labor and services, Victim-1 and any other person would suffer serious harm and physical restraint; and (5) by any combination of such means.

### The Object of the Conspiracy

16.     The object of the conspiracy was to obtain and maintain, by force, physical restraint, threats, and coercion, the labor and services of Victim-1, within the District of Puerto Rico and elsewhere, to enrich the conspirators.

### The Manner and Means of the Conspiracy

17.     The manner and means by which the co-conspirators carried out the object of the conspiracy included, but were not limited to, the following:

> a.  Defendants [1] PEÑA and [2] CORREA exploited the intellectual disabilities of Victim-1 to facilitate and further the conspiracy.
>
> b.  Defendants [1] PEÑA and [2] CORREA, together with others known and unknown to the Grand Jury, required Victim-1 to provide labor and services in the form of panhandling, engaging in fraudulent and criminal activities, and performing manual and domestic labor in and around their residence.
>
> c.  Defendants [1] PEÑA and [2] CORREA required Victim-1 to turn over the proceeds of Victim-1's labor and services to the defendants for their own use and benefit.
>
> d.  Defendants [1] PEÑA and [2] CORREA, together with others known and unknown to the Grand Jury, created a climate of fear by threatening Victim-

1 with, and subjecting Victim-1 to, physical, verbal, psychological, and financial abuse.

e.  Defendant [2] CORREA possessed firearms and brandished a firearm in Victim-1's presence.

f.  Defendants [1] PEÑA and [2] CORREA threatened Victim-1 with violence and death, including at the hands of other co-conspirators and family members who Victim-1 knew possessed and carried firearms and had engaged in gun violence, to dissuade Victim-1 from reporting their abuse and other criminal activity.

g.  Defendants [1] PEÑA and [2] CORREA frequently beat Victim-1— sometimes using objects such as belts, broomsticks, and cables—when Victim-1 did not obey their orders to panhandle or engage in other acts in furtherance of the conspiracy.

h.  Defendant [1] PEÑA, together with others known and unknown to the Grand Jury, confiscated, possessed, and maintained control of Victim-1's identification and other personal documents.

i.  Defendants [1] PEÑA and [2] CORREA restricted Victim-1's ability to travel outside of the residence by forcing her to sleep in a space in their residence formerly used to house goats, roosters, and/or other animals (as depicted below) and at times locking Victim-1 inside overnight. The room would become damp and/or flood when it rained.



j.  Defendants [1] PEÑA and [2] CORREA required Victim-1 to use a bucket and commode as a toilet to relieve herself while locked in the former goat and/or rooster pen.

k.  Defendants [1] PEÑA and [2] CORREA, along with other co-conspirators known and unknown to the Grand Jury, obtained and used the Social Security and other benefits of Victim-1 for their personal benefit and enrichment.

l.  Defendant [1] PEÑA made, and caused to be made, false statements and representations to the Social Security Administration in required forms, reports, and correspondence with the Social Security Administration in order to continue serving as Victim-1's representative payee and thereby continue receiving and controlling Victim-1's benefits.

m. Despite having access to and control over Victim-1's Social Security and other benefits, defendant [1] PEÑA failed to provide Victim-1 with basic hygiene items, such as clothes, toothbrushes, deodorant, and sanitary pads.

n. Defendant [1] PEÑA, together with other co-conspirators known and unknown to the Grand Jury, forced Victim-1 to purchase a vehicle—to wit, a Toyota Yaris—for the personal and financial benefit of defendant [1] PEÑA and her relatives.

o. Defendants [1] PEÑA and [2] CORREA, together with other co-conspirators known and unknown to the Grand Jury, supplied and distributed drugs and unprescribed medication to Victim-1 as a means of controlling Victim-1 and ensuring Victim-1's compliance with their demands.

p. Defendant [1] PEÑA, together with other co-conspirators known and unknown to the Grand Jury, confiscated, possessed, and maintained control of Victim-1's identification documents and other personal items (such as Victim-1's bank cards) and restricted Victim-1's access to those identification documents and other items.

q. Defendant [1] PEÑA restricted Victim-1's communication with family members, including by confiscating cellular telephones from Victim-1.

r. Defendants [1] PEÑA and [2] CORREA used their personal bank accounts to convert the Social Security and other benefits of Victim-1 for their personal benefit and enrichment.

7

s.   Defendants [1] PEÑA and [2] CORREA, together with co-conspirators known and unknown to the Grand Jury, took actions to conceal and disguise the conspiracy and acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Sections 1594(b) and 1589(a) and (d).

## COUNT TWO
### Forced Labor
(Title 18, United States Code, Sections 1589(a), (d) and 2)

1.   The allegations set forth in paragraphs 1 through 13 of the Introduction of this Indictment are incorporated by reference and realleged as though fully set forth herein.

2.   From in or about May 2018 and continuing until in or about October 2023, within the District of Puerto Rico and elsewhere, the defendants,

[1] LUZ MARIA PEÑA LOPEZ and
[2] TATIANA CORREA PEÑA,

aiding and abetting each other and others known and unknown to the Grand Jury, did knowingly provide and obtain the labor and services of Victim-1 by means of (1) force, threats of force, physical restraint, and threats of physical restraint to Victim-1 and any other person; (2) serious harm and threats of serious harm to Victim-1 and any other person; (3) the abuse and threatened abuse of law and legal process; (4) any scheme, plan, and pattern intended to cause Victim-1 to believe that, if she did not perform such labor and services, she and any other person would suffer serious harm and physical restraint; and (5) by any combination of such means.

All in violation of Title 18, United States Code, Sections 1589(a) and (d) and 2.

8

## COUNT THREE
Document Servitude
(Title 18, United States Code, Section 1592(a))

1.      The allegations set forth in paragraphs 1 through 13 of the Introduction of this Indictment are incorporated by reference and realleged as though fully set forth herein.

2.      From in or about May 2018 and continuing until in or about October 2023, within the District of Puerto Rico and elsewhere, the defendant,

### [1] LUZ MARIA PEÑA LOPEZ,

aided and abetted by others known and unknown to the Grand Jury, did knowingly conceal, remove, confiscate, and possess actual passports and other immigration documents, and other actual government identification documents, of Victim-1, in the course of a violation of Title 18, United States Code, Section 1589, with the intent to violate Title 18, United States Code, Section 1589, and to prevent and restrict and attempt to prevent and restrict, without lawful authority, Victim-1's liberty to move and travel, in order to maintain the labor and services of Victim-1, when Victim-1 was or had been a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000.

All in violation of Title 18, United States Code, Sections 1592(a) and 2.

## COUNT FOUR
Misprision of a Felony
(Title 18, United States Code, Section 4)

1.      The allegations set forth in paragraphs 1 through 13 of the Introduction of this Indictment are incorporated by reference and realleged as though fully set forth herein.

2.      From in or about May 2018 and continuing until in or about October 2023, within the District of Puerto Rico and elsewhere, the defendant,

### [3] ENRIQUE GUTIERREZ RIVERA,

9

having knowledge of the actual commission of a felony cognizable by a Court of the United States, to wit, the misuse of Social Security benefits in violation of Title 42, United States Code, Section 408(3), did conceal the same by not reporting such income in his tax returns, and did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, in violation of Title 18 United States Code, Section 4.

## FORFEITURE ALLEGATION

1.      The allegations of this Indictment are re-alleged as if fully set forth herein, for the purpose of alleging forfeiture, pursuant to Fed. R. Crim. P. 32.2(a), the defendants,

[1] LUZ MARIA PEÑA LOPEZ,
[2] TATIANA CORREA PEÑA, and
[3] ENRIQUE GUTIERREZ RIVERA,

are hereby notified that upon conviction of any of the offenses alleged in the Indictment, they shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 1594(d), the following: (1) any property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of such violation, and any property traceable to such property; and (2) any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of such violation, or any property traceable to such property.

2.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the Court;

10

d.    has been substantially diminished in value; or

e.    has been commingled with other property that cannot be divided without difficulty;

it is the intention of the United States to seek forfeiture of any other property of the defendant, as

subject to forfeiture under Title 21, United States Code, Section 853(p).


W. STEPHEN MULDROW
United States Attorney

TRUE BILL, ████

████

Foreperson
Date: Oct. 16 2025


Jenifer Y. Hernández-Vega
Chief, Child Exploitation and Immigration Unit


Daynelle Alvarez Lora
Assistant United States Attorney
Child Exploitation and Immigration Unit


HARMEET K. DHILLON
Assistant Attorney General


Jessica Arco
Trial Attorney
Human Trafficking Prosecution Unit
Civil Rights Division
United States Department of Justice

11